for argument cases of 18-31159 and 18-31161, both involving Tarsia Williams. And we will begin with Ms. Saucier. Good morning, Your Honor. Thank you so much for having us. As you know, Frank Williams, the decedent here, worked at the NASA Michoud facility for many years, from 1966 to 1968, and then again from 1974 to 1993, during which time he was an engineer, not a blue-collar worker, always working on computers, helping to design important parts of the external fuel tanks. While he was there, or shortly after he left, he developed mesothelioma and passed away as a result of his disease. And is it a fair conclusion that the only way you get mesothelioma is asbestos? Yes, ma'am. It's the only way. I mean, that's still true. We haven't discovered something else since the last time I did an asbestos case. Yes, ma'am. That's true. Okay. It's also true that there are only that low level, there's no safe exposure to asbestos in order to contract mesothelioma, which our expert drafted his affidavit and report to suggest that any exposure to asbestos is causative of mesothelioma. Every single exposure. And Mr. Williams was at the Michoud facility for more than 20 years, during which time the trial court recognized that there was evidence that there was a whole lot of asbestos-containing building materials built into the building, which would have been common at the time. However, during that time, those building materials were degrading, and the asbestos fibers, of course, you know, are only dangerous once they get into the air and they become respirable. A special danger in this case was that those fibers had been sprayed in with spray foam insulation into the return air plenum of the HVAC, so the area where the air conditioning system is sucking in the air and then blowing it out for the rest of us to breathe, especially Mr. Williams, that that particular area was degrading, that that spray foam insulation was supplied by the defendants that are here today in this consolidated appeal. Let me ask you about that. I understand everything you said thus far. What is your burden under this? Louisiana law applies, right? What is your burden of causation to connect up the asbestos to the individual companies, the individual defendant companies? Yes, sir. So in order to prove, to survive summary judgment, what we need to find is that a jury could find that the defendant's asbestos was or that the decedent was exposed to the defendant's asbestos, such that it could have been a substantial causing factor of the development of his disease. The causation part with mesothelioma is a very low standard because, as I've mentioned before, there is no other way to get mesothelioma, and it's causative at extremely low levels. I understand that. So the previous part is that there's this substantial factor. You have to link up the exposure to asbestos produced by the particular company. Is that right? The particular company. Okay. Exactly. And in this case, what we have is, particularly as to the McCarty Corporation, their own advertisement from 1968, 1969 time. It's undated, but some of the information in the brochure tells us what time it was. It says in the brochure that it has just completed one of the buildings downtown, which was completed in 1968. So we know it's of that time frame. And it advertises itself as the thermal insulator for the NASA facility. This is McCarty? McCarty, right. And McCarty, so it claims responsibility for it. In a brochure. Yes, in a brochure, which was provided to us in discovery. It accepts responsibility for that. One of the arguments that McCarty makes is that it was unclear that it was talking about this particular NASA facility. The brochure actually suggests that, makes note that it supplied insulation to three different NASA facilities. So including this one, it's clear that this one is there. In addition, McCarty has provided no contrary evidence for us. So even though McCarty has records, could go back and tell us if there was a different facility, if it wasn't this facility, or if they had provided something else, if the brochure had been printed incorrectly, for instance, but they make no argument of that. They just say the brochure is unclear. The brochure says we are the thermal insulator for this. And thermal insulation in this case is this spray-on, what's sometimes called limpet. It's a spray foam, so it degrades very quickly. And, of course, Mr. Williams, as I suggested, was employed there for many years, so it was degrading by the time he was there. What about TSI? TSI was, we have a few contracts where TSI was clearly a provider of other asbestos materials, including all the way through 1992 there are contracts in the record demonstrating that they were providing asbestos. Okay. You know, let's talk about what I see as the really tough issue for you, which is the jurisdictional issue. You're aware of the case law that says you can't create jurisdiction by dismissing without prejudice. That got you all back to the trial court. And now here we are. Was there room, was there a jurisdictional room for the district court to enter A54B this late in the game, or are you in that zone where the district court can't do anything and we don't have jurisdiction? Yes, Your Honor. Well, of course, I would argue that the district court obviously believed that it had authority to do it. Well, it kind of said, I'll let the Fifth Circuit decide if I had authority, and if I do, I'm giving you your 54B, which is a very conservative way to go about doing things, and I respect that in a trial court. Let's let the Fifth Circuit decide their own jurisdiction and not us. I get that, but that's not the same. Well, let's put it this way. That gets us back to this question, which is, are you in that zone where neither court has jurisdiction? The district court had no jurisdiction to enter anything because everything had been dismissed long ago, and we lack jurisdiction because of the fact that these were dismissals without prejudice that then were an effort to create appellate jurisdiction where there is none. Well, Your Honor, I'll answer that in a couple of ways. The first thing is when we requested the dismissal, we did not request a dismissal without prejudice. We requested a dismissal for the purpose of preserving our appeal rights, which was in our request and in the Court's order. So part of the question about a Rule 54B, when, while Rule 41 will say if it is silent, we would assume it is without prejudice, the fact is it was not silent. It did not say it was dismissed with prejudice, that those remaining defendants were dismissed with prejudice, but it did say that they were dismissed for the purpose of effectuating an appeal and preserving our appellate rights against the defendants with prejudice. But isn't that exactly what our case law says you can't do? I mean, you can't unilaterally decide to skirt around 54B by agreeing, hey, let's just agree to drop the rest of this case so we can go see what the Fifth Circuit has to say about the main point, point A instead of points B and C. I mean, our case law may be wrong, but, you know, the three of us are bound by it for better or for worse, and it's pretty longstanding, 20, 30 years' worth of case law saying you can't do it. Well, Your Honor, it says that that's true if it's silent. But we weren't silent. It specifically says we have to preserve our appeal rights. Well, but I don't know how saying what you're doing that we say is wrong helps. I mean, we say you can't just dismiss without prejudice to create appellate jurisdiction when you do it silently, like dismiss without prejudice. When you do it affirmatively, hi, we're creating appellate jurisdiction by dismissing, that doesn't strike me as helping you. Well, no. I guess what I'm saying, I'm sorry to be unclear. What I'm saying is we were attempting to dismiss with prejudice for the purpose of being done completely resolving that order, completely resolving the prior case. And this is your original 54B motion? Excuse me? Your initial 54B motion? Yes, sir. Yes. Even before that, our dismissal, when we requested dismissal of the remaining defendants, we did so while in the request and in the court order saying we are dismissing these defendants for the purpose of creating appellate jurisdiction, intending to never go back and So are you saying the silence is not saying with or without prejudice, not saying either? Silence would be not having any indication whatsoever, whether it was with prejudice or without. In this case, though we did not use the words I didn't do a good job of asking my question. So is silence not using either one of those phrases? Is that what silence is? Right. Yes, sir. All right. Not using either one of those phrases and not making any indication of what we were trying to do. In this case, we didn't use the words with prejudice, but we did use the we did Didn't we already rule on that in the 2018 case? Well, we did. You did. But the I think that at that point what was looked at was that the word with prejudice was not used. And the request and the order were clear that the purpose of the dismissal was to end that case entirely. The thing that we're trying to the courts are trying to prevent is us getting a second bite at the apple, a plaintiff being able to refile. But we made it clear. But you didn't use the words with prejudice either. Is that right? That's true. That's true. We did not use the words with prejudice, but we did make clear our intent to dismiss them with prejudice. And we did make clear our intent only appeal. If you had lost the appeal on the merits, and we'd taken jurisdiction and lost appeal on the merits, the defendants that you dismissed silently, if you will, if limitations hadn't run, I think you still could have sued them. And you would have had a good argument. Well, I never said it was with prejudice. They would have made the argument it was. You would have said it wasn't. And that would have been a debate. So, I mean, that's the reason why this stuff matters. Certainly, Your Honor. But it was clear from our request. I think it's clear from the trial court. Because the trial court was willing to go back for us and try to alter the judgment and create new judgments for us indicates that the trial court understood what we were trying to accomplish. Well, let's talk about the timing on that. So our decision for better or worse in Williams v. TSI, the 748F appendix 580-something comes out in 2018. When do you then take the next step? How much time elapses before you do something? Let's see. The 2018... We filed the request for... That was in August of 2018 when we filed... Prejudice asking for the Rule 54B judgment, which the court granted, understanding that that was its purpose and our request all along. If the court had believed that we were trying to get the second bite at the apple, the district court would not have assisted us in this way. And I would suggest that part of the issue... I mean, this has happened frequently where judgment is unclear for one reason or another and it's able to be revised. And that's essentially what the court is doing here, is revising with clarity what had happened previously. And I think that that's obviously the court's intent in granting the Rule 54B motion. So by virtue of the fact that the court thought that it was... Did you ever file a Rule 60 motion to try to amend the judgment? We did not. Okay. No, Your Honor. So, again, how do... And I'm not sure I think this is a good system that we have, but it's a system we have, which is that the dismissal without prejudice ends the district court's jurisdiction, but then doesn't give us jurisdiction. Then how can you get back to the district court without a Rule 60? You can't just show up, you know, tomorrow in a district court that ruled in 1990 and say, hi, would you please give me some further relief? You have to bring a Rule 60 and undo something and so on, okay? I'm not saying that would work, but that's how you do it. So how do we even get the district court back in this business here without a Rule 60? Well, there are two answers to that. One is, again, I think that the district court was attempting to clarify what it had previously attempted to do. But how can the district court... I mean, I can't just wake up one day and go clarify something I did 10 years ago. I've got to have jurisdiction to do that.  There are cases in which the district court... They can just wake up one morning and go, you know what, I think I'm going to clarify that judgment I wrote years ago. Yes, Your Honor. Well, what is the authority for that? I'm looking at Choice Hotels and Zoe v. Regions. Choice Hotels v. Goodwin, where it was insufficiently clear that the dismissal was with prejudice and the parties continued to negotiate. They thought it was a... Without prejudice dismissals, the parties continued to negotiate, and the district court said, oh no, what we had meant to do was have it be with prejudice. And the district court went back and was able to revise. And how did that come up? What was the mechanism to get the district... Because my experience is that district courts don't just wake up one day and start looking at their old cases that are closed. So something happens. What was that something? I don't recall, Your Honor. Okay. But the point is that the district court clearly believed that it was dismissing this case with prejudice so that we could appeal it, because they continued to go back and try to achieve, to give this court what it wanted so that we could proceed with the appeal. Because if the district court had believed that it did not have jurisdiction or that it had granted jurisdiction with prejudice and that the purpose, or without prejudice, our remedy was to refile suit against the remaining defendants, then it would have told us that rather than, you know, allowing or obtaining a 50-40   Right. And I mean, the district court can have whatever... I'm sorry. The district court can have whatever opinion it has, and I respect that, but we still have to decide jurisdiction essentially de novo. And so... Well, even the Marshall case, which defendants heavily rely on, the court looked at what the intent of, by the district court and by the parties, before making that determination. The intent of the court and the intent of the parties is important, and when it is not silent, I mean, although we did not use the word with prejudice, we were not silent. We asked specifically for appellate jurisdiction, meaning we want to proceed with appeal, we want to abandon everything else at the trial court and proceed with appeal. But if we accept your argument, are we contradicting our prior ruling in the 2018 748F appendix case, Williams v. TSI? No, Your Honor, because the district court has evidence that its intent was not what the court understood the paper to mean. All right. Well, you've reserved time for rebuttal. We'll hear what the other folks think. I'm guessing they disagree. Just a guess. Mr. Lassus. Good morning, Your Honors. Mr. Lassus, on behalf of Taylor Seidenbach. After hearing all the discussion about jurisdiction, I don't know if you want to go back to product identification with regards to exposure, but — I think you should address them both, but let's start with jurisdiction, since that's what we've most recently discussed. Do you agree that the record was not silent and that the intent was with prejudice? Your Honor, it's my understanding regarding jurisdiction, and I guess maybe a term that was adopted by this Court kind of really says it all, the so-called finality rule, and that's the trick bag that Your Honor was alluding to. Finality trap is what it's called. You're right, Your Honor. You corrected me. A trap, that's even — that even says a lot more, volumes more. It's a trap. It is a trap. It's a trap that attorneys, unfortunately, can find themselves in in many situations. Louisiana has a one-year prescriptive period for filing tort suits, and if you go, whoop, you can say, I had the intention of filing that lawsuit before the one-year ran, but intentions don't count for much, unfortunately. In this particular case, to avoid the finality trap, that Rule B54 certification should have been secured before dismissals without prejudice. And, of course, we know that that didn't happen in this case. But what was the point of our rulings in Williams v. TSI if the district court couldn't fix the problem? Well, they no longer had jurisdiction over the — once the Court dismissed those defendants without prejudice, the Court had no longer had jurisdiction over those defendants. And Your Honor mentioned Rule 60. Rule 60 has a one-year time limit. Once the one year goes by, Rule 60 is no longer an available remedy. Well, you have 60B6. In the unpublished Williams opinion that Judge Haynes was just talking about, did we reverse and render or reverse and remand? Meaning we — Unfortunately, I can't give you a definitive answer. I think you remanded it. So for what purpose did we remand if there was nothing they could do to secure a final appealable judgment? Quite frankly, I'm not too sure why it was remanded as forced curing. I'll put it to you. Maybe the answer to Your Honor's question is at that particular stage, I don't think the finality trap argument was urged to the Fifth Circuit. So maybe the Fifth Circuit in that room thought there was something else that could be done. Let me ask you about the finality trap because it's a little bit strange to me. So I want to make sure I understand. The problem for us on the Fifth Circuit is there's no final judgment because the dismissal was without prejudice in an effort to create appellate jurisdiction. But the problem in the district court is there is a final judgment and they lost jurisdiction. How can those two exist in the same paragraph? Well, I don't know if I used the term — when Your Honor used the term final judgment, the dismissal was without prejudice. So it's not a final judgment in the sense of the merits were finally ruled on in the But it was dismissed without prejudice and with a finality trap. If it's not a final judgment, then how does the district court lose jurisdiction? Because they dismissed the claim. So for that court to now have jurisdiction, you would have to refile. They would have to come back in, make an appearance, because once it's dismissed, the court no longer has jurisdiction over ABC defendant. Well, if it's not final, though, why can't you just come back and say motion to reinstate defendant X or motion to amend or whatever because you don't have a final judgment? When you have a final judgment, I understand the Rule 60 argument. But that's the Rule 60 to correct that. No, that's when there's a final judgment. But what I'm pushing back on is the finality trap because I'm saying how can it be that it's a final judgment when we're talking about the district court's jurisdiction, but it's not a final judgment when we're talking about the appellate court's jurisdiction? And it's the same case, same parties. How can that be? How can you have this netherworld of nothingness in this situation? Well, I hate to keep repeating myself, but in order to have appellate jurisdiction, you've got to have all the claims settled. But when you dismiss a defendant without prejudice, then that claim is not settled. Well, to have appellate jurisdiction, we need a final judgment. That's our rule. That's 1291. That's it. It doesn't say settled because I don't really know what that means. It says a final judgment. And so what I'm saying is if our rule, if our Ryan et sec rule is it ain't final if it's without prejudice, then it would seem that the district court would retain jurisdiction. If it is final, the district court doesn't have jurisdiction anymore, then we should have jurisdiction to hear it. I don't understand how you can have this netherworld. I, quite frankly, I beg to differ in the sense of I don't know how a district court can render or have jurisdiction over a party that it has dismissed, albeit without prejudice. Once the order of dismissal is signed, the court no longer has jurisdiction or control over that defendant. No longer before the court. If I'm wrong, do you disagree with that proposition? Are you aware of any circuit that has said the Fifth Circuit is wrong in the finality trap, disagree with us on that point? I'm sorry, in this circuit? No, in any other circuit. Your Honor, I can only say the Eleventh Circuit agrees. That's true. Well, I didn't examine, in all honesty, I didn't examine all the circuits. Ryan may have been old enough that they had to agree, because, you know, they're bound by, they're bound by all of the Fifth Circuit decisions that precede the split that I don't know, I didn't look at the date of it. But I do believe the Marshall case and the Ryan case are on all four. Yeah, they're bound by it. The Eleventh Circuit is bound by Ryan because it was issued in 1978, which is before the circuit split. I mean, there are exceptions. Aren't there exceptions to the finality trap? I'm not aware of an exception relative to the facts that exist before this Court today. I'm not aware of that. What about law of the case that by remanding it, they imply that something's left undue, remanding the Williams v. TSI 748 Appendix case? I can only, when you start getting into various theories, I can only submit to the Court that Marshall is controlling, Ryan is controlling, and this case is on all four. But Marshall's not controlling. It's persuasive, perhaps. I'm sorry. Ryan is controlling, but Marshall, I thought, was the Eleventh Circuit case. I think Marshall's Fifth Circuit as well. I think it's Perry that is the Eleventh Circuit, Your Honor. Is the idea of Marshall that when you have a dismissal. Oh, yeah. Marshall, okay. Yeah, you're right. The idea of Marshall is that if you have a dismissal that is silent, it is without prejudice. That's a presumption. That is, that's my understanding, Your Honor. And so the dismissals, the original dismissals that we're talking about here were silent with respect to whether they were with or without prejudice. Any dismissal that was silent is without prejudice. So that's how we get into the finality trap here. But it's Perry. That's what I was thinking of, and thank you for correcting me. But Perry is the Eleventh Circuit case that talks about the trap. Yes, Your Honor. Have we called it that? Actually, I think the term finality trap was in some kind of article, some analyzing some kind of legal article, and then because I think it's Marshall or Ryan that actually cited the article. Quote from Perry, the finality trap happens when a district court so on. So, I mean, they use the phrase. Maybe they didn't create the phrase, but they use it. What I'm saying is have we used that, we, the Fifth Circuit? Have we said, hey, you're not that we applied the rule, but that we called it that? Oh, yes, Your Honor. It's in the case. Whether it's Marshall or Ryan, they adopted the term. They didn't coin the phrase, but they adopted the term. Okay. We, the Fifth Circuit, adopted the term in what case? I must confess. It's either Marshall or Ryan. Well, I don't think we said it in Ryan because Ryan is what gave rise to it. I want to say Marshall. They actually adopted the term finality trap. Okay. I'll look at Marshall again. But if not Marshall, it's Ryan. It's one or the other. And, well. Okay. Your time and your colleague will no doubt have more to say. Thank you. Thank you, Your Honor. Daniel Caruso. So, unless you have anything to add to the trap, do you want to tell us about why if we get to you, if we have jurisdiction, if somebody has jurisdiction, y'all aren't at least? On the jurisdictional issue? Right. No, if you let me finish the question, you'll know what it is, sir. All right. If we have jurisdiction, or someone does, then do you want to tell us why y'all providing asbestos to NASA doesn't at least get Williams' past summary judgment? Thank you. To answer that question, let me say a few things. First of all, in response to what was said in the original discussion by Appellant, there are cases of mesothelioma that are idiopathic. They don't generally consider to be caused by asbestos, but sometimes they have mesothelioma and they've confined to asbestos exposure. There are cases like that. The issue of no safe exposure. What percentage is that? It's very small. Okay. But it was said. So at least as far as a civil case causation scenario, saying somebody got mesothelioma and also was exposed to asbestos is probably at least enough to get in the door. It's enough to say that mesothelioma is pathognomonic for asbestos exposure. Right. And then the question becomes, was it your asbestos that Mr. Williams was exposed to? Correct. How do you respond to her arguments about the evidence on that? Well, first of all, I'd like to say that the district court judge who handled this did, in fact, follow Louisiana law as it is been written and since it originated, I believe, in the Quick case, because Quick is like the origin of this law. And it said, Quick said, which is a Fourth Circuit Court of Appeals case, Quick v. Murphy Oil, Quick makes clear that a plaintiff's burden of proof against multiple defendants in a long latency case is not relaxed or reduced because of the degree of difficulty that might ensue in proving the contribution of each defendant's product to the plaintiff's injury. Thus, in an asbestos case, the claimant must show that he had significant exposure to the product complained of to the extent there was a substantial factor in bringing about his injury. And that language is followed consistently through all the appellate court cases in Louisiana and the Supreme Court in deciding what is basically, I don't want to call it a product liability case, because McCarty Corporation in its day was an insulation contractor. I mean, we didn't make asbestos, but we installed asbestos insulation. Sometimes we installed this insulation that had no asbestos in it. It just depended on what kind of insulation. Not all insulation is spray-on insulation. Some insulation is block. Some insulation is for wrapping around. But wasn't there at least some evidence that you all did the spray-on insulation? Not that I can find in the record, what they refer to. I want to get to this point because it's an important point, I think. I asked them what evidence they had with respect to McCarty, and they said the brochure. The brochure. Could you address that? It was interesting to me when I was going over this record that the plaintiff's expert originally, Dr. Frank Parker, who is an expert in all these cases, many of these cases. If you look at Record Exhibit 11219, which is an excerpt from his original deposition, when he was questioned about McCarty, he said he had absolutely nothing to say about McCarty and knew nothing about McCarty, even though they were the brochures, right? When we filed motion for summary judgment, they went and got an affidavit from him to try to oppose the summary judgment. We filed a motion to object to it because you shouldn't do that, have a contravailing affidavit, and we don't know what the judge did with this affidavit, but it's in the record, okay? And if you look at that affidavit, which begins at 15834, and you go through the entire affidavit, most of it speaks toward Lockheed's negligence and the executive officer's fault and all that kind of stuff. It's very lengthy. But for our purposes, the pivotal paragraph in that affidavit is this. Now, he's got all the evidence, correct? So he goes this. This is what he says. He says, based upon my review of the building maintenance and repair documents and the mechanical drawings and the methods by which asbestos was handled and my knowledge of the insulation sellers and installers and workers of various companies who regularly did insulation work in New Orleans metropolitan area, and my knowledge and experience, it is my opinion that Frank Williams suffered significant exposure to respirable asbestos sufficient to significantly increase the risk of developing mesothelioma from the products and or work practices of the following companies.  He just lists every defendant. He does not rely on this document. But you deny that McCarty sprayed asbestos insulation in Building 350. I can't deny and I can't admit it. There's no evidence of it one way or the other. I mean, there's no evidence of us ever spraying insulation in that building. Okay? We are an insulation contractor. They offer not one shred of evidence that McCarty sprayed any insulation in that building. Their evidence is they found a brochure that says McCarty is an asbestos insulator. In that brochure, McCarty said they had worked at Michoud facility, which is multiple buildings. I don't know how many buildings are out there. There's at least five or six listed in various affidavits. I'm not sure there's more. There's no evidence that was in this record that the trial judge could find when following Louisiana law where he would connect this, my client McCarty, to the exposure that this man had at that facility. Other than McCarty saying they sprayed insulation in that brochure. McCarty doesn't say they sprayed insulation there. There's two brochures. These are advertising brochures. The brochure says one of them just talks about jobs they did and doesn't refer to spray insulation. I mean, spray insulation is a type of insulation. The second brochure refers to spray insulation but doesn't, that they do spray insulation, but doesn't connect it to the Michoud facility. Okay? What about Ms. Saucier's argument that, okay, they've, you know, they're the plaintiff. They don't have all the evidence. They have to, you know, make implications. You guys can say here's our, you know, folder from that year, and we never did anything in Building 350. I mean, you all are the ones that have that evidence, and your failure to come forward with it, isn't that something we can look at? Well, certainly, but my only answer to that would be that this case was filed originally in 2009. This motion for summary judge was filed in the last part of 2013 and ruled on in 2014. You had four years of discovery time to rifle through everything we. . . So you're saying they should have found it. Well, it's part of discovery. In all of these cases, these are not magic. There's plenty of these cases, as you well know. You know, there's discovery about from coworkers, other employees, management, you know, all kind of people go looking for the very thing you're asking about. They had four years to do that, and it just never materialized. Judge Haynes' question, though. It was the plaintiff's burden to show causation ultimately. Right. That's their burden. Right. But we're at summary judgment. And so their argument is the brochure creates a genuine issue, a genuine fact issue as to causation. And your response is it doesn't because it doesn't specify the building. But you also said the affidavit of the expert. I mean, the affidavit of the expert does list McCarty, right? Well, the expert does not connect McCarty to the building. He just took all the defendants who were named in the lawsuit and put it in the affidavit. But doesn't the brochure connect McCarty to the facility? The McCarty brochure connects McCarty to something that's called Michoud Operations, which is multiple buildings. Okay. Whether it was this building or some other building. And he has the burden of connecting himself to a McCarty product. That's their burden, not my burden. He has to connect himself to a McCarty installed product that has asbestos and so forth. So the trial judge found he wasn't exposed to the rest of the asbestos. But putting that aside, it's their burden. And this one brochure, which is an advertising brochure, based on the analysis by the district court judge, who had this case for all these years, went on for a while apparently up there, found that there was not a material issue with regards to the connection of McCarty to Mr. Williams. Not unusual. Judge, there are plenty of cases where you're dealing with the fault of the employer. Then it doesn't matter where the asbestos came from. Sometimes you have a premises case. The owner of a building you're suing. It doesn't matter where the asbestos came from. It could have come from anywhere. Not important to you. In these cases, according to our law in Louisiana, it is critical for the defendant to connect his or herself to an exposure to a specific product that is a substantial contributing cause of the injury or the illness. And that's where the plaintiff failed in this case, although they have plenty of time to discover this information and it just never materialized for them and it was put before the court. We think the district court judge was correct when he made the decision, and consistent with the law of the state. Thank you. You used your time. Thank you. Thank you, Judge. If I might, Your Honor, just go through a couple of . . . Okay. I just wanted to say I look back at the Williams v. TSI judgment. They just dismissed for lack of jurisdiction. They didn't affirmatively say render or remand. They just dismissed. I have to go back and look at the record as to whether they sent it back or not. But go ahead. Yes, Your Honor. First, I'll point out that there was no evidence here that there was any idiopathic mesothelium and no question about that whatsoever. Second of all, there are multiple buildings at the Michoud facility, but in the brochure, McCarty brags that it is not a thermal insulator at the Michoud facility. It brags that it is the, the only thermal insulator at the Michoud facility. But how come in four years of discovery you haven't found the folder that is the work, you know, the work schedule, if you will, of the company? I mean, isn't that something you'd be digging for? It was something that we were digging for as the . . . McCarty never provided a deposition for us because their CEO was ill, and so we never got any real discovery. The discovery that we found . . . So did you resist the summary judgment by saying we need the CEO to get well or . . . No, Your Honor. We were forced to rely on old depositions that he had given because he had a doctor's note. The information that we found was by digging for hundreds of hours through old files out at the Michoud facility itself because we had no access to other than this brochure, no physical files from McCarty despite our discovery requests. So this is all the information we got. Hold on. Now you confuse me because you said you were digging through something, but then you said you had no access to files. What were you digging for? We were digging out at the facility at Michoud. We did not get any files. Digging through dirt? Through old files. Tell me. Through old files. So you had access to some files. Yes, but they were at Michoud. They were Lockheed's and NASA's and whoever stored files there, but not specifically McCarty's files. Why didn't you get McCarty's files? We were not given any in discovery, and our motion to compel was denied. And did I miss that in your appeal, that you complained about that? I don't think we complained about it in this case. That strikes me as kind of big because there is an answer there somewhere. I mean, my experience is, yeah, people can throw stuff away, but these old files, I mean, I spent many happy billable hours going through these old files in various cases. So the fact that McCarty wouldn't turn them over strikes me as a big deal. It is a big deal, and we had that trouble across the board in this case getting discovery receipts. And what about, there's always somebody in these investigative cases who saw somebody in a uniform. Like I saw him with a McCarty label on the jumpsuit. Is there anybody like that here? Not particular to McCarty. Remember that a lot of this was installed earlier, and it was degrading over time. So this is a little bit different than in ordinary asbestos cases where he's working nearby. And he sees the jumpsuit. This is old stuff that was degrading over time, so he wouldn't have necessarily seen that. His coworkers didn't see that either. They did see the remediation afterward, and we do have the contracts. In addition, at summary judgment stage, I'll remind you, according to the slaughter case, we don't have to provide a specific instance of exposure. We have to provide the fact that it's possible that the jury could find that there was exposure, and we know that by virtue of their own bragging, this limpet was inside all of the air conditioning systems which the judge recognized. In addition, I'd like to ---- I'm sorry. What's your response to their argument about the affidavit of the expert, that it was the actual evidence is certainly sufficient to create a genuine issue of material fact. But he also relied on that. The affidavit of the expert relied on that after, and he saw the brochure after he had given his deposition testimony. So that's why he was able to add that in, though he was never questioned about that later on. But that's sort of the facts of how that material ---- You're saying the affidavit of the expert after the deposition was able to make the statement about McCarty because of the brochure? Because of the brochure. And that appears in the affidavit? Not that he ---- I don't think he specifically says in the affidavit that it was because of the brochure, but he did say during his deposition that he hadn't seen the brochure and then later that's how he came to make the affidavit was that we had shown him that particular thing. But I just want to take the Court back, if you don't mind, to the appellate jurisdiction issue. Rule 41 says to all of you, and it says to the Court, that the district court is entitled to make a dismissal as it deems proper. And as the Court will remember, if the ---- because if it is ---- the reason that if a dismissal is silent, it is without prejudice, is to protect the interest of the plaintiffs. If the Court, because otherwise it would be unfair to the plaintiffs to ---- you know, the presumption is that it's without prejudice. If the Court ---- if a plaintiff files a request for a dismissal without prejudice and the Court instead says I'm only going to grant this with prejudice, then the plaintiff is required or the Court is required to give the plaintiff the opportunity to rescind that request and either proceed or then accept the dismissal with prejudice. And the reason for that is to protect the plaintiff's interest. The way that we're interpreting this finality trap here is the exact opposite of the intent of the rule. Oh, I think there are substantial problems with our rule, but it's a rule that even though it's not any way as a lawyer. Justice Duncan pointed out there are exceptions to it. I would like to point the Court back to the JETCO case, for instance, where there are exceptions, particularly where the intent is evidenced that we were not trying to be silent, we were not trying to dismiss without prejudice. Our intent all along, which the Court recognized by writing in that the dismissal was for the purpose of appeal, was to dismiss it so that it could go forward with the trial court. Thank you. We have your argument. We appreciate it. Y'all are excused. Have a great afternoon. May I address the Court on a housekeeping matter? Just briefly. Only that Mrs. Bloom is here who represents Lockheed. Isn't that fair? No. Y'all want to get into what are we going to do with the other cases and all that, and we aren't going to talk about that here. Okay. I just want you to revise. We're aware of that. Thank you. Okay. Thank you.